UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| UNITED STATES OF AMERICA, | ) | CASE NO.: 5:19MJ1322 |
|---|---|---|
| Plaintiff, | ) | JUDGE JOHN ADAMS |
| v. | ) | |
| DAVID FELIX, | ) | **ORDER AND DECISION** |
| Defendant. | ) | |

This matter comes before the Court on motion by the Government for revocation of the magistrate judge's order granting Defendant David Felix an unsecured bond. The Court has been advised, having reviewed the Motion, exhibits, and transcript of the hearing before the magistrate judge. It is hereby determined that the Government's is GRANTED. The magistrate judge's bond order is REVOKED and Felix is hereby ordered DETAINED.

**FACTS**

On October 21, 2019, Postal Inspector Marc Kudley identified a suspicious package that was addressed to Jessy Williams, 854 Harvard St., Akron, OH 44311. Utilizing a narcotics detection canine, Cruiser, Kudley placed the package in a lineup with several blank parcels. Cruiser alerted on the suspicious package. Inspector Kudley then sought and received a warrant to search the package. The search revealed that the package contained 820 grams of methamphetamine. The drugs were wrapped in black carbon paper and clear cellophane. Inspector Kudley then placed a representative sample of 30 grams back into the package and added an electronic monitoring device.

1

The device was designed to alert authorities when the package was opened.

The parcel was left on the front porch of the 854 Harvard Avenue just before noon. Roughly two minutes after its delivery, Felix exited 864 Harvard Avenue, an address roughly three residences south of the delivery address. Felix walked to 854 Harvard Avenue while speaking on his cell phone. Felix examined the parcel and placed it back on the porch. Felix then returned to 864 Harvard Avenue. Twenty-seven minutes later, Felix returned to the delivery address and retrieved the parcel. Felix once again returned to 864 Harvard Avenue and walked toward the back of the residence. Two minutes after Felix retrieved the parcel, authorities received an alert that it had been opened.

Officers observed Felix throw the USPS box into the garbage can at the end of driveway at 864 Harvard Avenue. Officers further observed Felix walk to the front of the residence with the parcel contents in his hands. Officers attempted to reach Felix before he entered the residence, but they were unsuccessful. Instead, officers knocked on the door and announced their presence. Felix did not respond, an officers were forced to breach the door to prevent the destruction of evidence. As some officers entered the residence, others observed an item being thrown from the second floor window. The item was later identified as the representative sample of methamphetamine that Inspector Kudley had placed in the parcel.

While conducting a safety sweep of the residence, officers recovered a .44 magnum revolver on the kitchen table. Officers then secured a search warrant for the residence. An unknown powder residue, scales, and an AM-15 rifle were recovered during that search. According to the proffer from the Government, Felix admitted to ownership of the revolver. Felix allegedly had purchased and sold the AM-15 rifle to another individual living at 864 Harvard Avenue. Felix also told officers that

he used marijuana on a daily basis.

Felix had his initial appearance before the magistrate judge on October 24, 2019. Felix was initially detained and a detention hearing was scheduled for October 29, 2019. Felix's hearing went forward on that date as scheduled. Neither party presented evidence. Rather, both offered support for their respective positions via proffer. The pretrial officer was also present and answered several questions posed by the magistrate judge. At the conclusion of the hearing, the magistrate judge concluded that the presumption in favor of detention had been overcome and ordered Felix released on a $20,000 unsecured bond. Felix, however, was not to be released until a satisfactory home inspection had been completed.

On October 30, 2019, the Government moved for revocation of the bond order. On October 31, 2019, the motion for revocation was assigned to the undersigned. At that time, the Court ordered that Felix remain in detention pending review of the Government's motion. The Court now resolves that motion.

## APPLICABLE LAW

18 U.S.C. § 3145(b) permits this Court to review the pretrial detention order of a magistrate judge.

> If a person is ordered detained by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court, the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order. The motion shall be determined promptly.

18 U.S.C. § 3145(b). When this Court "acts on a motion to revoke or amend a magistrate's pretrial detention order, [it] acts de novo and must make an independent determination of the proper pretrial detention or conditions for release." *United States v. Rueben*, 974 F.2d 580, 585 (5th Cir. 1992).

"[M]eaningful de novo review means that the district court should engage in the same analysis, with the same options, under § 3142 as the magistrate judge." *United States v. Yamini*, 91 F.Supp. 2d 1125, 1129 (S.D. Ohio 2000).

A judicial officer must order a defendant detained if no condition will reasonably assure his/her appearance at trial or if there is a serious risk to the safety of others or the community. 18 U.S.C. § 3142(e). A court, however, must consider all reasonable less restrictive alternatives to detention. 18 U.S.C. § 3142(e).

The Bail Reform Act of 1984 specifies that a finding that no conditions will reasonably assure the safety of another person or the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f). However, no standard of proof is given for a finding that no conditions will reasonably assure the defendant's appearance. Courts have held that such a finding must be supported by a preponderance of the evidence. *United States v. Patriarca,* 948 F.2d 789, 793 (1st Cir. 1991); *United States v. Aitken,* 898 F.2d 104, 107 (9th Cir. 1990); *United States v. King,* 849 F.2d 485, 489 (11th Cir. 1988); *United States v. McConnell,* 842 F.2d 105, 110 (5th Cir. 1988); *United States v. Jackson,* 823 F.2d 4, 5 (2nd Cir. 1987); *United States v. Vortis,* 785 F.2d 327, 328-29 (D.C. Cir.) (per curiam); *United States v. Portes,* 786 F.2d 758, 765 (7th Cir. 1985); *United States v. Orta,* 760 F.2d 887, 891 n.20 (8th Cir. 1985).

18 U.S.C. § 3142(g) sets forth factors that a court must consider when determining whether to release a defendant on bail/bond, with or without conditions, or order that he be held in custody until completion of trial. The factors listed in Section 3142(g) are as follows:

> (1) the nature and circumstance of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;
>
> (2) the weight of the evidence against the person;

    (3) the history and characteristics of the person, including –

    (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

    (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

    (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

Moreover,

> [s]ubject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more[.]

18 U.S.C. § 3142(e). The Court will discuss each of the above factors as they relate to the facts in the case at bar.

## DISCUSSION

The parties agree that a rebuttable presumption in favor of detention exists herein based on the charges against Felix. 18 U.S.C. § 3142(e).

> As our sister circuits have found, section 3142(e)(3)'s presumption in favor of detention imposes only a "burden of production" on the defendant, and the government retains the "burden of persuasion." A defendant satisfies his burden of production when he comes forward with evidence that he does not pose a danger to the community or a risk of flight. Although a defendant's burden of production is not heavy, he must introduce at least some evidence.
>
> Even when a defendant satisfies his burden of production, however, the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court. The presumption remains as a factor

because it is not simply an evidentiary tool designed for the courts. Instead, the presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial. To rebut the presumption, therefore, a defendant should present all the special features of his case that take it outside the congressional paradigm.

*United States v. Stone*, 608 F.3d 939, 945–46 (6th Cir. 2010)(citations, quotations, and alterations omitted).

In the instant matter, Felix has failed to rebut the presumption. When examining the record, it is unclear what evidence Felix presented to rebut the presumption. Felix did nothing at his detention hearing other than proffer the information contained in the pretrial services report. Counsel indicated that Felix's mother, father, and brother were in the courtroom and were long-time residents of the local community. Counsel then attempted to explain why Felix had given multiple addresses to the authorities and pretrial officer. Counsel also presented that Felix has substance abuse issues, an issue demonstrated by the fact that Felix tested positive for both marijuana and cocaine use when tested by pretrial services. Counsel also noted that Felix had a very minor prior criminal history. In ordering Felix released on bond, the magistrate judge noted:

> Well, having considered the evidence and the arguments, the Court finds that the presumption has been overcome in this case. The defendant has ties to the community that are fairly strong in terms of family connection. He has a very minimal criminal history. Before he could be -- but -- so I find that the evidence does, in fact, overcome the presumption that exists and I do believe that conditions can be set that would assure the safety of the community and the defendant's appearance in this case.

Doc. 13 at 28.

Initially, it is unclear how the magistrate judge concluded that Felix had "fairly strong" ties to the community. No testimony was introduced from any of his family members. Moreover, counsel's statement that Felix's family members would be willing to offer him a place to live is

insufficient to rebut the presumption of detention. *See United States v. Gray*, 20 F. App'x 473, 475 (6th Cir. 2001) ("That evidence apparently would have consisted of testimony by two of Gray's relatives who are willing to allow him to live with them pending his new trial. Such evidence is not sufficient to rebut the presumption in favor of detention."). Similarly, Felix's limited criminal history does not rebut the presumption. *See United States v. Perry*, No. 16-20062, 2017 WL 1364083, at *10 (E.D. Mich. Apr. 7, 2017) ("Second, Defendant's argument that he has limited criminal history does not rebut the presumption of detention or that he is a danger to the community. *See, e.g., Rodriquez*, 950 F.2d 88-89 (the government does not need to prove a history of violence or dangerous conduct to detain a defendant pending trial because he is a danger to the community)."

Beyond the issues surrounding the presumption of detention, the Court is deeply troubled by the analysis, or lack thereof, conducted by the magistrate judge prior to her bond determination. There are numerous troubling details in the record that are wholly unaddressed by the magistrate judge. First, according to the Government's proffer, Felix admitted ownership of the revolver to authorities at the time of his arrest. When interviewed by pretrial services, Felix denied owning any firearms. Standing alone, that conflict suggests a lack of truthfulness from Felix. This issue was only compounded by other issues in the pretrial report. Felix informed the pretrial officer that he had worked for a construction company for the five years prior to his arrest. Inexplicably, Felix was unable to give the name or the address of the company he alleged to have worked for since October of 2014. The magistrate judge did not address this issue in reaching her decision.

In addition, the magistrate judge appears to have given weight to the fact that Felix's family members were willing to offer him a residence. In so doing, the magistrate wholly ignored that Felix was actively using a property owned by his father, 864 Harvard Avenue, to facilitate his drug

7

trafficking. As such, the offer by Felix's family members to offer him a place to live does not aide his cause in seeking to be released on bond. Instead, Felix has demonstrated a willingness to utilize the generosity of his family members to facilitate his drug trafficking.

The magistrate judge also ignored the fact that Felix refused to respond when officers approached the 864 Harvard Avenue residence. Instead, he fled to the upstairs and attempted to destroy or conceal the methamphetamine in his possession. Finally, the magistrate failed to address the Government's information regarding Felix's admission to owning the revolver. The Government proffered that the revolver was believed to be stolen, while Felix admitted to purchasing it. Regardless of how it came into his possession, the record reflects that the revolver was in plain sight in the residence that Felix was using to facilitate his drug trafficking, only enhancing the danger of his conduct and his danger to the community.

Based upon the above, the Court could strip away the presumption of detention in this matter and still find my clear and convincing evidence that no condition or combination of conditions will reasonably assure the appearance of the Defendant at trial and that if released from custody, even with possible conditions, would be a serious risk to the safety of others and the community. As the Sixth Circuit has noted:

> And our Court routinely affirms, on dangerousness grounds, the pre-trial detention of run-of-the-mill drug dealers, even without any indication that the defendant has engaged in violence. *See, e.g., United States v. Hinton*, 113 Fed.Appx. 76 (6th Cir. 2004) (unspecified drug trafficking charges); *United States v. Ortiz*, 71 Fed.Appx. 542 (6th Cir. 2003) (conspiracy to distribute and possess over five kilograms of cocaine); *United States v. Miller*, 39 Fed.Appx. 278 (6th Cir. 2002) (conspiracy to possess with intent to distribute marijuana); *United States v. Lattner*, 23 Fed.Appx. 363 (6th Cir. 2001) (unspecified "drug trafficking charges"); *United States v. Gray*, 20 Fed.Appx. 473 (6th Cir. 2001) (conspiracy to possess with intent to distribute seven kilograms of cocaine, testimony from family members insufficient to overcome the presumption). To be sure, drug trafficking is a serious offense that, in itself, poses a danger to the community. *See United States v. Hare*, 873 F.2d 796, 798 (5th Cir.

1989) (stating that "[t]he risk of continued narcotics trafficking on bail constitutes a risk to the community," cited approvingly in many of the previously listed cases); *see also United States v. Leon*, 766 F.2d 77, 81 (2d Cir.1985) ( "[I]t is clear that the harm to society caused by narcotics trafficking is encompassed within Congress' definition of 'danger'").

*United States v. Stone*, 608 F.3d 939, 947 (6th Cir. 2010). Moreover, Felix is not a run-of-the-mill drug dealer. He attempted to evade officers and destroy evidence and possessed a firearm. He also tested positive for the use of both cocaine and marijuana. He could not identify the name or address of his employer despite asserting that he had worked for the company for five years. He gave conflicting statements to his arresting authorities and the pretrial officer. He utilized a property owned by his parents to facilitate his drug trade while simultaneously arguing that the willingness of his family to house him should allow for bond. In other words, Felix checks every box to suggest that he is a danger to the community and a flight risk. Accordingly, the magistrate judge's bond order is hereby revoked.

## CONCLUSION

This Court finds that no condition or combination of conditions will reasonably assure the appearance of the Felix at trial and that if released from custody, even with possible conditions, he would be a serious risk to the safety of others and the community. Therefore, the magistrate judge's bond order was improper. Defendant is hereby ordered detained, and a separate detention order will issue from the Court.

IT IS SO ORDERED.

Date: November 5, 2019      */s/ John R. Adams*
                                                              JUDGE JOHN R. ADAMS
                                                              UNITED STATES DISTRICT JUDGE